# Illinois Official Reports

## Appellate Court

***Hutsonville Community Unit School District No. 1 v. Illinois High School Ass'n**,*
**2021 IL App (5th) 210308**

| | |
|---|---|
| Appellate Court Caption | HUTSONVILLE COMMUNITY UNIT SCHOOL DISTRICT NO. 1; I.S., a Minor, by Her Parent and Next Friend, Cory Sheets; and CORY SHEETS, Petitioners-Appellants, v. ILLINOIS HIGH SCHOOL ASSOCIATION, and CRAIG ANDERSON, as Executive Director of the Illinois High School Association, Respondents-Appellees. |
| District & No. | Fifth District<br>No. 5-21-0308 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | October 19, 2021<br><br>November 5, 2021<br>November 5, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Crawford County, No. 21-CH-12; the Hon. Kimbara G. Harrell, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Jerrold Harris Stocks, of Featherstun, Gaumer, Stocks, Flynn & Eck, LLP, and Shane M. Mendenhall, of Bolen, Robinson & Ellis, LLP, both of Decatur, for appellants.<br><br>David J. Bressler, of Clingen, Callow & McLean, LLC, of Lisle, for appellees. |

Panel JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
Justices Welch and Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1 Petitioners, Hutsonville Community Unit School District No. 1 (Hutsonville), I.S., a student athlete, and the athlete's parent, Cory Sheets, appeal the trial court's denial of their motion for a temporary restraining order (TRO) against respondents, the Illinois High School Association (IHSA) and its executive director, Craig Anderson. The petitioners' motion requested the trial court enjoin the IHSA from enforcing its August 23, 2021, resolution that precluded IHSA member schools, on probation for noncompliance with the Governor's August 4, 2021, COVID-19 Executive Order No. 85 (Exec. Order No. 2021-18, 45 Ill. Reg. 10,726 (Aug. 4, 2021)) mask mandate, from participating in the State Series. For the following reasons, we reverse.

¶ 2                                    I. BACKGROUND

¶ 3 On September 28, 2021, petitioners filed a verified two-count complaint against respondents, alleging a breach of contract based on the IHSA constitution and bylaws in the first count and requesting injunctive relief in the second count. Petitioners attached copies of the IHSA constitution and bylaws; the IHSA board of directors' August 23, 2021, resolution; Executive Order No. 2021-18, 45 Ill. Reg. 10,726 (Aug. 4, 2021); the August 20, 2021, COVID-19 Executive Order No. 86 (Exec. Order No. 2021-19, 45 Ill. Reg. 10,886 (Aug. 20, 2021)); the August 26, 2021, COVID-19 Executive Order No. 87 (Exec. Order No. 2021-20, 45 Ill. Reg. 11,429 (Aug. 26, 2021)); the September 3, 2021, COVID-19 Executive Order No. 88 (Exec. Order No. 2021-22, 45 Ill. Reg. 11,639 (Sept. 3, 2021)); the September 17, 2021, COVID-19 Executive Order No. 89 (Exec. Order No. 2021-23, 45 Ill. Reg. 12,217 (Sept. 17, 2021)); the September 17, 2021, COVID-19 Executive Order No. 90 (Exec. Order No. 2021-24, 45 Ill. Reg. 12,222 (Sept. 17, 2021)); the September 21, 2021, COVID-19 Executive Order No. 91 (Exec. Order No. 2021-25, 45 Ill. Reg. 12,929 (Sept. 21, 2021)); and the Illinois State Board of Education's (ISBE) August 11, 2021, correspondence from State Superintendent of Education Dr. Carmen Ayala advising each school district to comply with Executive Order No. 2021-18 and providing repercussions to the school districts that failed to comply with the mandate; and correspondence between IHSA's executive director and the superintendent of Hutsonville, Julie Kraemer. Petitioners simultaneously filed a motion for a TRO, which incorporated the verified complaint and was further supported by the affidavit of Kraemer along with a memorandum in support of the TRO. On September 29, 2021, petitioners filed a notice of hearing on the motion for TRO, set on October 5, 2021.

¶ 4 On October 5, 2021, respondents filed a verified response to petitioners' motion for TRO supported by two of the documents previously attached to petitioners' motion, Executive Order No. 2021-18 and the IHSA board of directors approved recommendation. Respondents also attached Sangamon County trial court's December 1, 2020, opinion and judgment order for *In re Covid-19 Litigation*, No. 20-MR-589 (Cir. Ct. Sangamon County Dec. 1, 2020), the

underlying TRO filed in that case, the September 21, 2021, revised public health guidance for schools issued by the ISBE, and the August 10, 2021, "All Sports Policy."

¶ 5   On October 5, 2021, the case proceeded to hearing. Following argument, the trial court issued a docket entry denying the TRO. Petitioners timely appealed under Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017).

¶ 6                                    II. ANALYSIS

¶ 7   Typically, the grant or denial of a TRO is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *C.D. Peters Construction Co. v. Tri-City Regional Port District*, 281 Ill. App. 3d 41, 47 (1996). "However, where the trial court does not make any factual findings and rules on a question of law, the appellate court's review is *de novo*." *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 32; see also *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 63 (2006). Here, no factual findings were provided by the trial court. The docket entry stated, "Arguments made. Court denies Motion for TRO." Further, the parties agree that petitioners' motion alleged a breach of contract. The construction, interpretation, or legal effect of a contract are questions of law reviewed *de novo*. *Freeburg Community Consolidated School District No. 70 v. Country Mutual Insurance Co.*, 2021 IL App (5th) 190098, ¶ 79. As such, our review is *de novo*.

¶ 8   To obtain preliminary injunctive relief, the moving party must "demonstrate (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." *Mohanty*, 225 Ill. 2d at 62. As such, we address whether petitioners established the necessary elements for the issuance of the TRO.

¶ 9   Petitioners provided undisputed facts raising a *prima facie* case with respect to the second and third elements. They alleged that preclusion from the State Series removed any possibility for Hutsonville or its students to compete for that year, and because I.S. is a senior, she would never again be able to participate in the State Series. Petitioners also alleged they had no adequate remedy at law because failure to compete for a year was the type of injury that could not be corrected by monetary judgment. See *Makindu*, 2015 IL App (2d) 141201, ¶ 44. Respondents fail—in the trial court or on appeal—to dispute these allegations or argue such allegations fail to establish the second and third elements. As such, we find the petitioners set forth a *prima facie* case of irreparable injury in the absence of an injunction and that they had no adequate remedy at law.

¶ 10  We now turn to whether petitioners had a right to compete in the State Series that needed protection and the likelihood of the success on the merits of the case. We consider these elements together because "once the plaintiff established a fair question that his rights had been violated, he also established a fair question that he would likely prevail on his claim." *Id.* ¶ 38.

¶ 11  On review, "we examine only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights." *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177 (2002). "All that is necessary is that the plaintiff raise a fair question as to the existence of a right needing protection, leading the court to believe that the plaintiff will be entitled to the prayed-for relief if the proof presented at trial should sustain its allegations." *Tie Systems, Inc. v. Telcom Midwest, Inc.*, 203 Ill. App. 3d 142, 150-51 (1990). The petitioner "is not required to make out a case which would entitle him to relief on the merits; rather, he need only show that he raises a 'fair question'

about the existence of his right and that the court should preserve the status quo until the case can be decided on the merits." *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382 (1985). The purpose of preliminary injunctive relief is not to determine controverted rights or decide the merits of the case, but to prevent a threatened wrong or continuing injury and preserve the status quo with the least injury to the parties concerned. *Makindu*, 2015 IL App (2d) 141201, ¶ 31. "A TRO should not be refused *** merely because the court may not be absolutely certain the plaintiff has the right he claims." *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 541-42 (1983).

¶ 12    Petitioners' motion asserted Hutsonville had a protectable right as a member of the IHSA based on the organization's constitution and bylaws that established eligibility to compete in the State Series. Petitioners further asserted that the IHSA's August 23, 2021, resolution breached the contract between IHSA and its members by affecting Hutsonville's eligibility to participate in the State Series and therefore affected its rights as a member of the IHSA. Petitioners further contend that I.S., as a student athlete at Hutsonville, is a third-party beneficiary of the contract.

¶ 13    Respondents did not dispute that Hutsonville is a public school and member school of the IHSA for the 2021-22 school year and instead argued that Hutsonville did not have a protectable interest due to the outcome of litigation in *Pritzker v. Board of Education of Hutsonville CUSD No. 1*, as well as *JL Properties Group B, LLC v. Pritzker*, 2021 IL App (3d) 200305, and *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623. Respondents further argued that I.S., as a student athlete, did not have a protectable interest as a third-party beneficiary of the contract between IHSA and Hutsonville because the contract did not explicitly name any student and "whatever privileges they enjoy under the contract are derivative of the rights of the member schools they attend and do not exist independently."

¶ 14    We first note that neither the legitimacy of the Governor's mandates nor the ISBE's ability to place a school on probation for its failure to adopt the Governor's mandates is at issue in this case. While Executive Order No. 2021-18 imposes a mask mandate on schools, it does not speak to the school's eligibility to participate in IHSA State Series or a school's status as an IHSA member. Also, the ISBE, through its August 11, 2021, correspondence, stated that a school district's failure to comply with the Governor's mandate "risk[ed] State recognition." It continued by stating:

> "A district would have multiple opportunities to remedy the deficiencies that present a health hazard or a danger to students or staff before becoming unrecognized. A district would first have its recognition status changed to 'On Probation' and would be asked to submit a corrective action plan. Failure to address the deficiencies would lead to nonrecognition, meaning total loss of access to state funding and loss of the school's ability to engage in any Illinois High School Association and Illinois Elementary School Association athletic competitions."

The ISBE correspondence therefore did not require the IHSA to do anything outside of its constitution and bylaws.

¶ 15    Since neither the Governor's executive orders nor the ISBE stated that "on probation" leads to loss of the school's ability to engage in any IHSA athletic competitions, the only issues before us are whether petitioners have a protectable interest in competing in IHSA athletic competitions and whether the IHSA had the authority to exclude petitioners, as an IHSA member and a public school with the ISBE classification of "on probation," from participating

in the State Series. To answer these questions, we look to the IHSA's constitution and bylaws and its authority thereunder.

¶ 16    In Illinois, the constitution and bylaws of associations can constitute a contract between the association and its members. *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 133 (1986). Petitioners assert Hutsonville—as an IHSA member—has a contractual right to participate in the State Series under the IHSA constitution and bylaws if it adheres to the requirements thereunder. Respondents have not disputed, in the trial court or on appeal, that member schools have contractual rights under its constitution and bylaws.

¶ 17    As to I.S., we agree that not all third-party beneficiaries under a contract enjoy the benefits of a contractual right. An "intended beneficiary" is intended by the parties to the contract to receive a benefit for performance of the agreement and has rights and may sue under the contract. *Hacker v. Shelter Insurance Co.*, 388 Ill. App. 3d 386, 394 (2009). Conversely, an incidental beneficiary of a contract has no rights and may not sue to enforce them. *Id.* As such, the issue is whether I.S. was an intended, or an incidental, beneficiary of the contract between IHSA and Hutsonville. Here, it was undisputed that I.S. was a senior who played on Hutsonville's volleyball team. It was also undisputed that I.S. would not be able to play in the State Series based on the board's resolution. "In third-party beneficiary contracts, a party (the promisor) promises to render a certain performance not to the other party (promisee), but rather to a third person (beneficiary)." *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 13. Here, the IHSA's promise to render certain performance under its constitution and bylaws involves allowing eligible students to participate in the State Series as it would be impossible for a member school to participate in the State Series without student athletes. We therefore find IHSA is the promisor, Hutsonville is the promisee, and I.S. is the intended beneficiary.

¶ 18    Finding that petitioners had rights under the IHSA's constitution and bylaws, we now must determine whether they presented a *prima facie* case that respondents did not have authority under the constitution and bylaws to preclude petitioners' participation from the State Series. In this respect, petitioners contend respondents violated their rights when respondents amended the IHSA's constitution and bylaws to preclude a school whose ISBE's status was "on probation" from the State Series without following the procedures set forth in the IHSA's constitution and bylaws. Respondents contend that the IHSA board did not amend its constitution or bylaws and only exercised its plenary authority as provided in the bylaws. Respondents further argued that the resolution "did not represent a permanent change" but was a measure adopted by the board "to protect students given the ongoing emergency."

¶ 19    Under section 1.420 of the IHSA constitution, the IHSA board has plenary authority to

"interpret the Constitution and By-Laws and to exercise all powers and duties expressed or implied in this Constitution and By-Laws and to act as an administrative board in the interpretation of and final decision on all questions."

However, regardless of its plenary authority, the IHSA constitution and bylaws are devoid of any reference to schools that have a probationary classification issued by the ISBE, regardless of the reason for the classification. There is also nothing in the IHSA constitution or bylaws that allows the organization to issue emergency rules on the eligibility of a member school or athlete. In fact, the document reveals the opposite that first requires a finding of ineligibility by the executive director and, if disputed, an appeal and hearing before the board of directors. The constitution also sets forth an amendment process to change any constitutional provisions,

bylaws, or requirements, none of which occurred regarding preclusion of "on probation" schools.

¶ 20 Rather, the IHSA's constitution and bylaws provide that a student must—*inter alia*—attend member schools to compete in the State Series. Among other eligibility requirements not relevant here, the eligibility criteria for a school under the IHSA constitution and bylaws requires the school to be "recognized" by the ISBE. It is undisputed that Hutsonville is a member of IHSA. There is also no allegation that Hutsonville or I.S. violated any rule or condition that would preclude participation in the State Series but for respondents' August 23, 2021, resolution. Given the allegations, and lack of contrary evidence, we find that petitioners alleged sufficient facts to set forth a *prima facie* case that they had a clearly ascertained right in need of protection and likelihood of success on the merits.

¶ 21 As such, we address the balance of the equities if the injunction were granted. *Makindu*, 2015 IL App (2d) 141201, ¶ 47. Here, respondents argued that the harm to petitioners would be decisively outweighed by the harm to the IHSA and the State of Illinois, as a whole, if the injunction were granted. Respondents explained compliant schools have already inquired whether they had to compete with noncompliant schools at the State Series, indicating that the State Series may be disrupted by refusal to compete with noncompliant schools. They further explained due to the Delta variant, allowing petitioners to compete would increase the likelihood of a serious illness and, quite possibly, death. Respondents contended that imposing a TRO that allows Hutsonville to participate in the State Series serves as a signal that schools can turn a blind eye toward the Governor's public health orders.

¶ 22 We find an inquiry as to whether compliant schools would have to compete with noncompliant schools is not evidence that such compliant schools would refuse to do so. Also, given the length of time provided by the ISBE for any school with the "on probation" classification to submit a corrective action plan, we find respondents' listing of possible harms related to the granting of the TRO speculative. Under the ISBE's correspondence, even the schools whose status is "on probation" could be changed to "recognized" once the schools submitted a corrective plan. In such circumstance, IHSA's resolution would not preclude that school and its students from competing in the State Series, despite the school's prior noncompliance. Any school that fails to remedy its "on probation" status will be classified as "not recognized" and therefore lose its IHSA member status as well as the ability to compete in the State Series.

¶ 23 Moreover, as stated above, the issue underlying this case is not the Governor's mandate or the refusal of petitioners to comply with the Governor's mask mandate at IHSA's events. The TRO concerns only respondents' authority to change a member school's eligibility to participate in the State Series based on an ISBE's "on probation" status. Because the executive orders and ISBE did not direct respondents—explicitly or impliedly—to preclude participation based on a school's "on probation" status, their authority is limited to the IHSA's constitution and bylaws. Here, petitioners alleged sufficient facts to establish a *prima facie* case that respondents violated their rights by failing to adhere to its constitution and bylaws.

¶ 24 Under these circumstances, the trial court erred in denying petitioners' TRO and keeping the status quo until the merits of the arguments could be determined. "Status quo," for purposes of obtaining a preliminary injunction, means the last actual, peaceable, uncontested status that preceded the pending controversy. *Id.* ¶ 45. The "status quo" in this instance is the member

school's status prior to the board's August 23, 2021, resolution.

<h3 style="text-align:center">III. CONCLUSION</h3>

For the reasons stated herein, we reverse the trial court's denial of the TRO, grant the TRO until 10:30 a.m. on October 22, 2021, and remand the case to adjudicate the merits of this case at that time.

Reversed and remanded.