# Illinois Official Reports

## Appellate Court

---

### *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334

---

| | |
|---|---|
| Appellate Court Caption | GUNS SAVE LIFE, INC., Plaintiff-Appellant, v. KWAME RAOUL, in His Official Capacity as Attorney General of the State of Illinois; and BRENDAN KELLY, in His Official Capacity as Acting Director of the Illinois State Police, Defendants-Appellees. |
| District & No. | Fourth District<br>No. 4-19-0334 |
| Filed | December 3, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 19-CH-180; the Hon. Matthew Maurer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Christian D. Ambler, of Stone & Johnson, Chtrd., of Chicago, and David H. Thompson and Peter A. Patterson, of Cooper & Kirk, PLLC, of Washington, D.C., for appellant.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Sarah A. Hunger, Assistant Attorney General, of counsel), for appellees. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Presiding Justice Holder White and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1        In May 2019, plaintiff, Guns Save Life, Inc. (hereinafter GSL), filed a complaint for declaratory and injunctive relief, on behalf of its members, against defendants, Kwame Raoul and Brendan Kelly, in their official capacities, alleging that the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/0.01 *et seq.* (West 2018)) is unconstitutional as a violation of the federal and state constitutional right to bear arms. Plaintiff claims the FOID Act charges a tax on the rights of Illinois's citizens provided by the second and fourteenth amendments of the United States Constitution (U.S. Const., amends. II, XIV) and article I, sections 2 and 22, of the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 22) and violates the equal protection clause of the fourteenth amendment by improperly requiring one to pay for a license to own a firearm. Additionally, plaintiff filed a motion for a temporary restraining order and a preliminary injunction seeking to restrain enforcement of the FOID Act as a clear violation of the right to keep and bear arms. In a hearing on the motion, the trial court found plaintiff had not met its burden, and plaintiff filed an interlocutory appeal.

¶ 2        On appeal, plaintiff argues that the trial court erred by denying plaintiff's motion for a preliminary injunction. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In May 2019, plaintiff, GSL, an organization which describes itself as "an independent not-for-profit organization dedicated to defending the Second Amendment rights of Illinois residents," filed a four-count complaint for declaratory and injunctive relief against defendants on behalf of its members, identifying two members in particular—Harold Meyer and an unnamed 84-year-old United States Marine Corps (Marine) veteran. In the complaint, plaintiff alleged Meyer, a Cook County resident and member of its organization, was denied the ability to renew his Firearm Owners Identification (FOID) card because the Illinois State Police erroneously determined he had been convicted of battery in 1983. His license was revoked, and he was forced to turn his guns over to his wife. The complaint further alleged that the unnamed veteran lost his license when he forgot to renew his FOID card; as a result, the police confiscated his guns and his expired FOID card. In count I, plaintiff contends the FOID Act is unconstitutional on its face as directly violative of the second amendment to the Constitution of the United States. Plaintiff further alleges the FOID Act's licensing fee places a tax upon the free exercise of a constitutional right and is violative of the second amendment as well as the fourteenth amendment (see U.S. Const., amends. II, XIV). Count II repeats the same claims, alleging they are also violative of Illinois's version of the second amendment found in article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22). Count III alleges a violation of the equal protection clause of the United States Constitution (U.S. Const., amend. XIV), claiming the FOID Act, in effect, creates different classes of people, who may or may not exercise their second amendment right to possess a firearm based solely on paying a fee,

which is unrelated to the statute's expressed purpose, *i.e.*, the promotion of public safety. Count IV is a similar allegation under the Illinois Constitution's version of the equal protection clause (Ill. Const. 1970, art. I, § 2).

¶ 5 In conjunction with its complaint, plaintiff filed a motion for a temporary restraining order and preliminary injunction, claiming the FOID Act violated the second amendment and Illinois's version thereof and it was entitled to injunctive relief. In May 2019, defendants filed an objection to the motion, alleging plaintiff failed to establish the elements for a preliminary injunction and that plaintiff lacked associational standing. Later that month, the trial court held a hearing on the motion and denied the motion for a temporary restraining order and preliminary injunction, finding plaintiff failed to meet its burden.

¶ 6 This appeal followed.

¶ 7 ## II. ANALYSIS

¶ 8 ### A. Sufficiency of Complaint

¶ 9 We first address defendants' contention that plaintiff's complaint failed to assert a claim that would entitle it to a preliminary injunction. Defendants argue the complaint addressed only the unconstitutional nature of the FOID card fees, but its motion for injunctive relief raised for the first time a claim that the act itself was unconstitutional. As a result, defendants contend the motion "depart[ed] significantly from the allegations in [the] complaint" and did not support enjoining enforcement of the entire FOID Act. We disagree.

¶ 10 "The right to injunctive relief necessarily brings into question the sufficiency of the complaint ***." *Olympic Federal v. Witney Development Co.*, 113 Ill. App. 3d 981, 984, 447 N.E.2d 1371, 1373 (1983). "Where a statute is attacked as unconstitutional in its entirety ***, equitable relief may be sought." *Ron Smith Trucking, Inc. v. Jackson*, 196 Ill. App. 3d 59, 64, 552 N.E.2d 1271, 1275 (1990). Even so, "[a] complaint for injunctive relief must contain on its face a clear right to relief and state facts which establish the right to such relief in a positive, certain and precise manner." *Heerey v. Berke*, 179 Ill. App. 3d 927, 939, 534 N.E.2d 1277, 1284 (1989). While the complaint must show "the relief sought is warranted" (*McErlean v. Harvey Area Community Organization*, 9 Ill. App. 3d 527, 529, 292 N.E.2d 479, 481 (1972)), the complaint does "not have to make out a case which would entitle the plaintiff" to a final judgment (*H.K.H. Development Corp. v. Metropolitan Sanitary District of Greater Chicago*, 47 Ill. App. 2d 46, 51, 196 N.E.2d 494, 497 (1964)). The plaintiff must only "raise[ ] a fair question as to the existence of the right claimed." *H.K.H. Development Corp.*, 47 Ill. App. 2d at 51. The purpose of these requirements is to ensure the defendant " 'be informed of the injunction proposed against him so that he may be present, if he wishes, to defend himself.' " *Miollis v. Schneider*, 77 Ill. App. 2d 420, 427, 222 N.E.2d 715, 719 (1966) (quoting *Streamwood Home Builders, Inc. v. Brolin*, 25 Ill. App. 2d 39, 44, 165 N.E.2d 531, 534 (1960)). "Where the defendant answers or responds to the plaintiff's complaint, the trial court must hold a hearing to determine the legal sufficiency of that complaint and to resolve any questions of material fact." *Russell v. Howe*, 293 Ill. App. 3d 293, 296, 688 N.E.2d 375, 378 (1997).

¶ 11 In viewing the complaint in its entirety, plaintiff raised its claims against the FOID Act as well as the fees attached thereto. Plaintiff began its factual allegations by outlining the FOID Act's requirements, including the various restrictions on possession and ownership of firearms and/or ammunition without a FOID card, as well as the requirements for obtaining or renewing a FOID card. It noted how the FOID Act requires all residents to obtain a FOID card in order

to "keep or bear firearms anywhere, including their own homes," or to possess ammunition. In bold type, on the fifth page of a 12-page complaint, plaintiff asserted, "The FOID Act Infringes on the Rights of Guns Save Life Members." Plaintiff noted further how, but for the FOID Act's requirements, GSL members "would not be subject to these restrictions on their right to possess firearms." The restrictions to which it referred were not merely the payment of the fee, but the acquisition, maintenance, and renewal of the card. Repeatedly throughout the allegations of the complaint, plaintiff references how the FOID Act infringes on its members' right to possess firearms for their personal defense. As defendants correctly note, plaintiff's complaint unquestionably references the unconstitutional nature of the FOID card fees, frequently referring to them as an unconstitutional tax. However, the complaint also states in each count "[t]he FOID act is unconstitutional on its face because it directly burdens the exercise of Second Amendment rights" and provides a factual basis for the conclusion by describing how the act has been interpreted. All four counts of the complaint reference the unconstitutionality of the FOID Act "on its face," and in each prayer for relief, plaintiff seeks a declaratory judgment finding the FOID Act "violates the Second and Fourteenth Amendments to the United States Constitution" as well as injunctive relief from enforcement of the FOID Act. Nowhere in the complaint does plaintiff request only the removal of an unconstitutional fee.

¶ 12    Counts I and II include allegations of fact regarding Meyer and the 84-year-old Marine veteran—who are ostensibly prevented from exercising their second amendment rights because the FOID Act—and defendants' enforcement of the FOID Act, which required them to surrender their firearms for failing to possess a valid FOID card. In both counts, the plaintiff also unmistakably requested a preliminary injunction against enforcement of the FOID Act. In light of all the above, we find it puzzling that defendants began their objection to plaintiff's motion for a temporary restraining order and preliminary injunction before the trial court with the statement, "Plaintiff does not seem to argue that the FOID Card Act's requirement for a license for Illinois residents to possess a firearm is, in and of itself, unconstitutional," and they continue to make this claim on appeal. Defendants should have been aware from a plain reading of the complaint that plaintiff was claiming the FOID Act itself was unconstitutional and its unconstitutionality formed the basis of the proposed injunction against them. Thus, we will consider in this appeal whether plaintiff established a clear right to injunctive relief on the claimed unconstitutionality of the FOID Act or, in the alternative, the FOID Act's licensing fee.

¶ 13                                B. Associational Standing

¶ 14    Defendants argue plaintiff lacked associational standing to bring its claim before the trial court. We disagree.

¶ 15    Associational standing is a doctrine "through which an organization may assert the legal rights of its members in certain circumstances." *Winnebago County Citizens for Controlled Growth v. County of Winnebago*, 383 Ill. App. 3d 735, 740, 891 N.E.2d 448, 454 (2008). Having first developed in federal law, associational standing was recognized by the Illinois Supreme Court in *International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security*, 215 Ill. 2d 37, 828 N.E.2d 1104 (2005). The court discussed the concept of associational standing as enunciated by the United States Supreme Court in *Warth v. Seldin*, 422 U.S. 490 (1975):

" 'There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. Moreover, in attempting to secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties.' " *International Union of Operating Engineers*, 215 Ill. 2d at 46 (quoting *Warth*, 422 U.S. at 511).

Our supreme court concluded that associational standing served an important function in recognition of one of the primary reasons people join an organization—the creation of an effective tool for vindicating interests they share in common. The pooling of resources, expertise, and capital under a name identifying their collective interests was seen as an effective way for individuals who may not otherwise have the resources to pursue their own causes of action to do so as part of an association. *International Union of Operating Engineers*, 215 Ill. 2d at 50.

¶ 16    However, the issue of associational standing, which follows the same basic principles as individual standing, may "be forfeited if not raised in a timely manner in the trial court." See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 253, 930 N.E.2d 895, 916 (2010) (identifying basic principles of standing). As a result, under Illinois law, a plaintiff initially has no burden to plead and prove standing. *Senese v. Climatemp, Inc.*, 222 Ill. App. 3d 302, 317, 582 N.E.2d 1180, 1190 (1991). It is the defendant who must plead and prove lack of standing as a defense to a plaintiff's claim. *Climatemp*, 222 Ill. App. 3d at 317. "The issue of standing presents a question of law that this court reviews *de novo*." *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35, 965 N.E.2d 404.

¶ 17    We are unable to ascertain whether the ruling of the trial court was meant to imply that the court found standing or not. By stating only that plaintiff failed to meet its burden, the trial court arguably could have determined that plaintiff did, in fact, have standing, but that plaintiff failed to meet its burden to show it was entitled to injunctive relief. Trial courts are presumed to know the law, and therefore, the trial court would have known the burden to prove standing remained with defendants. *People v. Jordan*, 218 Ill. 2d 255, 269, 843 N.E.2d 870, 878 (2006). It is just as possible the trial court did not, for whatever reason, address standing and instead ruled on the merits of the motion for injunctive relief. Regardless, we must address the issue *de novo*.

¶ 18    An association has standing to bring a suit when it meets three requirements: " '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *International Union of Operating Engineers*, 215 Ill. 2d at 47 (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). "The issue of plaintiff's standing is determined from the allegations contained in the complaint." *Illinois Ass'n of Realtors v. Stermer*, 2014 IL App (4th) 130079, ¶ 26, 5 N.E.3d 267 (citing *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1101, 943 N.E.2d 1157, 1161 (2011)). " 'One has standing to challenge the validity of a statute if he has sustained or if he is in immediate danger of sustaining some direct injury as a result of enforcement of the statute.' " *People v. Aguilar*, 2013 IL 112116, ¶ 12, 2 N.E.3d 321 (quoting *People v. Mayberry*, 63 Ill. 2d 1, 8, 345 N.E.2d 97, 101 (1976)). Further, payment of a tax establishes standing to challenge the constitutionality of the statute

under which the tax is imposed. *DeWoskin v. Loew's Chicago Cinema, Inc.*, 306 Ill. App. 3d 504, 513, 714 N.E.2d 1047, 1056 (1999).

¶ 19   Under the first requirement for associational standing, the association's members must have standing to sue under their own right. See *International Union of Operating Engineers*, 215 Ill. 2d at 47. This means "an organization suing as representative [must] include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996). A member has such standing when the claimed injury is "(1) 'distinct and palpable' [citation]; (2) 'fairly traceable' to the defendant's actions [citation]; and (3) substantially likely to be prevented or redressed by the grant of the requested relief [citation]." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93, 524 N.E.2d 561, 575 (1988); see also *Illinois Ass'n of Realtors*, 2014 IL App (4th) 130079, ¶ 33 (stating, to establish standing, a "plaintiff's allegations must demonstrate a direct injury to a legally cognizable interest, of it or its members, traceable to defendants' actions").

¶ 20   Here, with regard to the first element, whether plaintiff's injury is distinct and palpable, plaintiff alleges the FOID Act is unconstitutional and the fees associated with obtaining a FOID card equate to an unconstitutional tax. While plaintiff does not allege the organization itself paid the fee or that its constitutional right to bear arms has been violated, plaintiff does allege many GSL members reside in Illinois who have acquired and maintained their FOID cards as required by the FOID Act in order to exercise their constitutional right to possess firearms, including within their own homes. In addition, in order to continue to lawfully possess their firearms in Illinois, they will be forced to renew and continue renewing their FOID card, a requirement they would not otherwise do, or have to do, in 48 out of 50 states, in the exercise of their second amendment rights. In order to obtain a FOID card, they are subjected to the $10 fee imposed by the FOID Act and the renewal fee of $10 every 10 years. 430 ILCS 65/5 (West 2018). In addition, if they change addresses or names—or the card is lost, destroyed, or stolen—they must notify the Illinois State Police and pay $5 for a new card. 430 ILCS 65/13.2 (West 2018). Plaintiff alleges these fees impose an unconstitutional burden on the right to keep and bear arms, directly affecting its members. Similarly, even upon paying the required fee, its members are still bound to the FOID Act's further requirements, which unconstitutionally require them to retain a FOID card on their person in all circumstances to possess firearms. Plaintiff also identifies two specific individuals, Meyer and the unnamed Marine veteran, who have lost their right to legally possess a firearm in Illinois because of the FOID Act's requirements.

¶ 21   With regards to the second element, which requires the injury to be fairly traceable to defendants, here, under both claims, the members are subject to a distinct injury, one that would not exist if, as plaintiff alleges, the FOID Act was not enforced by defendants. As to the third element, regarding redressability, defendants cannot repeal the FOID Act, since what is sought is repeal of the act itself as an unconstitutional infringement on second amendment rights. However, if the statute were held unconstitutional, defendants would have nothing to enforce.

¶ 22   The question is whether plaintiff properly included a member with standing to sue in its complaint. Defendants argue plaintiff lacked associational standing because it failed to name or identify at least one member with standing to sue.

¶ 23   Defendants are correct in noting the complaint only identifies Meyer and the unnamed Marine veteran and does not precisely state that Meyer, the unnamed Marine veteran, or any

specific member have paid the fees. However, the complaint specifically states, "[m]embers of Guns Save Life are subject to the FOID Act's restrictions and have acquired and maintained FOID cards for the sole purpose of complying with the law." When identifying the parties to the litigation, the complaint said GSL members were required by law to obtain a FOID card and pay the fee, renewing it every 10 years for an additional $10. As individuals who formerly possessed FOID cards, Meyer and the unnamed Marine veteran had to pay the FOID Act's fees in order to obtain their cards. Additionally, to regain their rights to possess firearms, both will be required to pay the FOID Act's fees again. Defendants have cited no authority, nor are we aware of any authority, requiring plaintiff to provide names of individuals in its complaint to establish associational standing. Although defendants rely on *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009), and *Illinois Ass'n of Realtors*, 2014 IL App (4th) 130079, to support their argument, both cases are distinguishable from the present case, and neither requires the strict results or interpretation of standing defendants urge us to adopt.

¶ 24    *Summers* involved members of an environmental organization, claiming they sustained an indirect injury from regulations applying only to forest service officials. *Summers*, 555 U.S. at 493. In an attempt to establish standing, the organization submitted an affidavit from one of the members indicating the member visited many national forests and planned to visit several unnamed forests in the future. *Summers*, 555 U.S. at 495. The Court found the organization failed to show how any of its members suffered a direct or specific injury capable of being redressed. The organization did not contend that any of the members had concrete plans to visit a site where the challenged regulations are being applied in a manner that will harm that member's concrete interests. *Summers*, 555 U.S. at 495. The Court stated, " '[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish.' " *Summers*, 555 U.S. at 493-94 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). Thus, the difficulty with the plaintiff's ability to achieve standing was not the organization's failure to specifically identify a person, but that it could not show how any of its members suffered a direct injury.

¶ 25    Similarly, in *Illinois Ass'n of Realtors*, the trial court granted the defendant's motion to dismiss, finding the plaintiff lacked standing in a suit filed by an organization against state officials for transferring monies from the Real Estate License Administration Fund into the General Revenue Fund operated by the State. *Illinois Ass'n of Realtors*, 2014 IL App (4th) 130079, ¶ 11. This court affirmed the trial court's ruling after finding the plaintiff's members were *indirectly* affected by the transfer of monies to the general fund and therefore could not demonstrate a *direct* injury attributed by the defendants to its members. *Illinois Ass'n of Realtors*, 2014 IL App (4th) 130079, ¶ 33.

¶ 26    Here, plaintiff asserts its members are *directly* affected by both the restrictions placed on firearm ownership and the licensing fee imposed to procure a FOID card, as opposed to being *indirectly* affected by speculative injury. Unlike *Illinois Ass'n of Realtors*, where the organization sued over a transfer that did not directly impact the organization or its members, or *Summers*, where the plaintiffs experienced no direct harm, plaintiff's members pay the fee at issue and are directly affected by the requirements and restrictions of the FOID Act. They are, therefore, not subject to the " 'substantially more difficult' " standard referenced in *Summers* for those suffering indirect injury. (Internal quotation marks omitted.) *Summers*, 555 U.S. at 493 (quoting *Lujan*, 504 U.S. at 562).

- 7 -

¶ 27 As plaintiff argues, in cases where members of the organization are directly impacted, the organization does not need to name specific individuals to establish standing. See *Disability Rights Wisconsin, Inc. v. Walworth County Board of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008) (recognizing the first requirement for associational standing "still allows for the member on whose behalf the suit is filed to remain unnamed by the organization" when the plaintiff pleads that at least one member suffered an injury); *Doe v. Stincer*, 175 F.3d 879, 884-85 (11th Cir. 1999) (declining to require "that a party suing as a representative must specifically name the individual on whose behalf the suit is brought" and finding it sufficient to merely "allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right"). Such a rule is in line with the doctrine of standing, which "is designed to insure that the courts are accessible to resolve actual controversies between parties and not address abstract questions, moot issues, or cases brought on behalf of others who may not desire judicial aid." *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.*, 143 Ill. App. 3d 285, 292, 492 N.E.2d 969, 974 (1986). Therefore, to satisfy the first requirement of associational standing as adopted by our supreme court in *International Union of Operating Engineers*, an association bringing suit on behalf of its members must allege in its complaint that one or more of its members has suffered a cognizable or direct and palpable injury attributable to the defendant, but it is not necessary for an association to identify one of its members by name in the complaint to properly allege injury in fact to its members. See *Disability Rights Wisconsin, Inc.*, 522 F.3d at 802.

¶ 28 Here, as to both claims, plaintiff has satisfied the basic requirement of associational standing by identifying a member adversely affected by the FOID Act. Plaintiff alleged its members have paid the FOID card fees, have had to obtain a FOID card in order to possess firearms in their own homes, and must continue to renew those cards in order to lawfully purchase or possess firearms or ammunition in Illinois, even though citizens of 48 other states are not so burdened. Plaintiff alleges its members have suffered injuries because of the unconstitutional nature of the act and identified the purpose of the organization as one which represents the interests of its members in protecting their second amendment rights.

¶ 29 Defendants next argue that plaintiff's complaint is conclusory, failing to meet the second requirement for standing, whether the interests plaintiff seeks to protect are germane to the organization's interests. This is to ensure that the " 'association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary.' " *International Union of Operating Engineers*, 215 Ill. 2d at 48 (quoting *Brown Group*, 517 U.S. at 555-56). A union acting "as the sole bargaining agent for its members with the purpose of furthering their work-related interests" (*International Union of Operating Engineers*, 215 Ill. 2d at 51) was a goal that "could not be more germane to the purpose of the union" (*International Union of Operating Engineers*, 215 Ill. 2d at 52). Defendants are correct in stating an organization cannot obtain standing merely by asserting its interests are those of the members. "[A] party cannot gain standing merely through a self-proclaimed interest or concern about an issue, no matter how sincere." *Glisson v. City of Marion*, 188 Ill. 2d 211, 231, 720 N.E.2d 1034, 1045 (1999).

¶ 30 Defendants' argument, however, is not persuasive and attempts to shift the burden to plaintiff. Defendants maintain plaintiff's assertion that it is "an independent not-for-profit-organization dedicated to defending the Second Amendment rights of Illinois residents" is insufficient for standing. However, it is the defendant who must prove lack of standing as a

defense to a plaintiff's claim. See *Climatemp*, 222 Ill. App. 3d at 317. Contrary to defendants' assertion, plaintiff's complaint sets forth in specific terms that it is "an independent not-for-profit organization dedicated to defending the Second Amendment rights of Illinois residents." Further, it argues the organization exists to promote the second amendment and limit infringement on the right to keep and bear arms. On behalf of its members, plaintiff states it seeks to eliminate the unconstitutional requirement that citizens must obtain approval from the state to exercise their second amendment right to possess firearms even in their own home, as well as the fee associated with procuring a FOID card under the FOID Act because it is an unconstitutional tax and an infringement on their rights under the second amendment. Since the organization's interest is to protect the second amendment—and that is what its claim seeks to accomplish—plaintiff's interests are clearly germane to its purpose. Thus, plaintiff has satisfied the second requirement of associational standing.

¶ 31 Under the third requirement for associational standing, "neither the claim asserted nor the relief requested [must] require[ ] the participation of individual members in the lawsuit." (Internal quotation marks omitted.) *International Union of Operating Engineers*, 215 Ill. 2d at 47. This means standing does not exist when "significant participation by the individual members" of the plaintiff association will be necessary to establish the plaintiff's right to relief. *Winnebago County Citizens*, 383 Ill. App. 3d at 743. Accordingly, the third requirement focuses more on " 'matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution.' " *International Union of Operating Engineers*, 215 Ill. 2d at 48 (quoting *Brown Group*, 517 U.S. at 557).

¶ 32 Here, defendants have failed to allege any individual members of GSL are indispensable to the case and must participate in order to gain relief. Defendants merely argue that plaintiff has failed to meet the third element because plaintiff failed to state its members will not need to participate in the case. However, as noted above, it is defendants' burden, not plaintiff's, to prove a lack of standing. Without alleging and proving that substantial participation is required by any of the GSL members, defendants have failed to affirmatively plead the defense of standing. Plaintiff's claims involve the constitutionality of the FOID Act and fees it imposes, as clearly indicated in its complaint. Nothing about those claims will require significant member participation. In fact, it is not unreasonable to assume many of the facts to be proved may come by way of stipulation. Although we cannot presume how proofs may proceed at trial, it is not unrealistic in cases of this size and nature, where the issues are framed less by the facts than the law, that the parties may well stipulate to membership rolls, payment of fees, initial applications and renewals, or that the gun-owning members have complied with the various requirements of the FOID Act in order to obtain and possess firearms in Illinois. More importantly, plaintiff is not required to show whether individual member participation is required. This is something for defendants to raise as an obstacle to a finding of associational standing. Having failed to do so, a plain reading of the complaint and motion for injunctive relief permits us to conclude that plaintiffs have satisfied the third requirement for associational standing.

¶ 33 We therefore conclude that plaintiff has associational standing to sue defendants on its claims that the FOID Act is unconstitutional and the fees required by the act amount to an unconstitutional tax.

¶ 34                      C. Temporary Restraining Order and Preliminary Injunction

¶ 35       Plaintiff contends the trial court erred by denying its request for a preliminary injunction against the enforcement of the FOID Act. We disagree.

¶ 36       "The grant of a preliminary injunction is an extraordinary remedy, and courts do not favor their issuance." *Ford Motor Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 903, 918 N.E.2d 1140, 1147 (2009). As such, they " 'should be granted only in situations of extreme emergency or where serious harm would result if the preliminary injunction was not issued.' " *World Painting Co. v. Costigan*, 2012 IL App (4th) 110869, ¶ 11, 967 N.E.2d 485 (quoting *Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378, 943 N.E.2d 725, 729 (2010)). The party seeking injunctive relief must show it has raised a fair question about the existence of a protectable right "and that the court should preserve the status quo until the case can be decided on the merits." *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382, 483 N.E.2d 1271, 1275 (1985). Further, the purpose of granting the preliminary injunction should be to "preserve[ ] the status quo until the merits of the case are decided." *Clinton Landfill*, 406 Ill. App. 3d at 378; see also *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 397, 626 N.E.2d 199, 202 (1993) ("The status quo to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy.").

¶ 37       To succeed on a motion for a preliminary injunction, a plaintiff must show "(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62, 866 N.E.2d 85, 91 (2006). For each element, "the plaintiff must raise a 'fair question' that each of the elements is satisfied." *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 31, 40 N.E.3d 182. However, "[m]ere opinion, conclusion, or belief will not suffice." *McErlean*, 9 Ill. App. 3d at 529. "If these elements are met, then the court must balance the hardships and consider the public interests involved." *Makindu*, 2015 IL App (2d) 141201, ¶ 31.

¶ 38                                      *1. Standard of Review*

¶ 39       "Trial courts have substantial discretion in deciding whether to grant a preliminary injunction ***." *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 268, 880 N.E.2d 188, 195 (2007). "This court generally reviews a trial court's grant or denial of a preliminary injunction for an abuse of discretion." *Clinton Landfill*, 406 Ill. App. 3d at 378. "An abuse of discretion does not occur when a reviewing court merely disagrees with the trial court's decision ***." *Aventine Renewable Energy, Inc. v. JP Morgan Securities, Inc.*, 406 Ill. App. 3d 757, 760, 940 N.E.2d 257, 260 (2010). Instead, "[a] trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the court's view." *People ex rel. Madigan v. Petco Petroleum Corp.*, 363 Ill. App. 3d 613, 634, 841 N.E.2d 1065, 1082 (2006); see also *People v. Taylor*, 2016 IL App (1st) 141251, ¶ 15, 65 N.E.3d 514. Consequently, "the mere fact that [a reviewing court] might have reached a different result does not amount to an abuse of discretion." *In re Marriage of Ribordy*, 128 Ill. App. 3d 1073, 1077, 471 N.E.2d 1029, 1032 (1984). That is, "the appellate court does not substitute its judgment for that of the trial court or determine whether the trial court acted wisely." *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 29, 69 N.E.3d 402.

¶ 40 "However, where the trial court does not make any factual findings and rules on a question of law, the appellate court's review is *de novo*." *Makindu*, 2015 IL App (2d) 141201, ¶ 32. "Issues that invoke *de novo* review include whether a statute is unconstitutional on its face ***." *Makindu*, 2015 IL App (2d) 141201, ¶ 32. When the case presents mixed issues of both law and fact, the trial court's discretion "will not be overturned absent a clear showing of abuse of discretion." *Cook County v. Rosen & Shane Wine & Spirits, Inc.*, 58 Ill. App. 3d 744, 749, 374 N.E.2d 838, 842 (1978).

¶ 41 Here, the *de novo* standard of review applies. Plaintiff alleges the FOID Act is unconstitutional on its face because it prohibits Illinois residents from possessing firearms and imposes a tax on the right to bear arms. Although plaintiff references certain facts as they relate to the identified members to illustrate the unconstitutional nature of the FOID Act, the crux of plaintiff's claim is that the FOID Act itself is unconstitutional, which is a question of law. Although we will discuss the difference between facial and as-applied constitutional challenges later, suffice it to say that, even if we were to consider plaintiff's claim an as-applied challenge, or if plaintiff argues in the alternative that we should consider the claim an as-applied challenge, at this stage, it is still a question of law. See *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 13, 104 N.E.3d 1179 ("Because the constitutionality of a statute presents a legal question, we review the present as-applied challenge to the civil forfeiture statute *de novo*."); *People v. Martin*, 2018 IL App (1st) 152249, ¶ 11, 111 N.E.3d 168 ("We review *de novo* whether the armed habitual criminal statute *** as applied to the defendant, was unconstitutional under the second amendment of the United States Constitution."). Additionally, the trial court made no findings of fact to support its decision to deny the preliminary injunction, so we are left having to scour the record for the bases for denial. Since the basic claim is as to the unconstitutionality of the FOID Act on its face, we must take plaintiff at its word and assume a facial constitutional challenge. Accordingly, plaintiff's claim that the FOID Act is unconstitutional is a question of law requiring a *de novo* standard of review.

¶ 42                              2. *Nature of the Constitutional Challenge*

¶ 43 " '[F]acial challenges are to constitutional law what res ipsa loquitur is to facts—in a facial challenge, *lex ipsa loquitur*: the law speaks for itself.' " *Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011) (quoting Nicholas Q. Rosenkranz, *The Subjects of the Constitution*, 62 Stan. L. Rev. 1209, 1238 (2010)). A challenge directed at a statute claimed to be facially unconstitutional measures the terms of the statute against the relevant constitutional doctrine and contends the infirmities found in the statute invalidate it in its entirety. *Ezell*, 651 F.3d at 698. Plaintiff's present challenge to the constitutionality of the FOID Act is known as a "valid rule" challenge, first labeled as such in Marc E. Isserles's *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement* (Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement*, 48 Am. U. L. Rev. 359 (1998)) and later discussed in Justice Karmeier's special concurrence in *People v. One 1998 GMC*, 2011 IL 110236, ¶ 73, 960 N.E.2d 1071 (Karmeier, J., specially concurring). Plaintiff's claim, whether labeled as such or not, has all the elements of a "valid rule challenge," *i.e.*, the constitutional defect is inherent within the statute and it can never pass constitutional muster since it contravenes basic rights otherwise provided by the second amendment. Plaintiff referenced two members, Meyers and the unnamed veteran, as examples of how the application of the

statute violates their second amendment rights. Defendants, on the other hand, contend how easy it would be for each to secure their FOID cards by utilizing the procedures contained within the FOID Act. Such an argument, either wittingly or unwittingly, mixed an as-applied challenge with a facial one.

¶ 44     "Although facial and as-applied constitutional challenges are both intended to address constitutional infirmities, they are not interchangeable." *People v. Thompson*, 2015 IL 118151, ¶ 36, 43 N.E.3d 984. The United States Supreme Court has, however, found "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010). "An as-applied challenge arises from a defendant's contention that the statute or law as it is applied to his particular situation is unconstitutional." *Martin*, 2018 IL App (1st) 152249, ¶ 11. The challenge depends upon the "particular circumstances and facts" of the plaintiff's case and requires the plaintiff to show how, based on those circumstances, "the statute violates the constitution." *Thompson*, 2015 IL 118151, ¶¶ 36-37. However, "a facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *Thompson*, 2015 IL 118151, ¶ 36. "In a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant. It is enough that '[w]e have only the [statute] itself' and the 'statement of basis and purpose that accompanied its promulgation.' "*Ezell*, 651 F.3d at 697 (quoting *Reno v. Flores*, 507 U.S. 292, 300-01 (1993)). Justice Karmeier, quoting from Isserles's article, noted:

> " '[A] court faced with a valid rule facial challenge [needs] to evaluate the challenged statute against the relevant constitutional doctrine, independent of the statute's application to particular cases. *** [A] valid rule facial challenge is a challenge that "puts into issue an explicit rule of law, as formulated by the legislature or the court, and involves the facts only insofar as it is necessary to establish that the rule served as a basis of decision." ' " *One 1998 GMC*, 2011 IL 110236, ¶ 93 (Karmeier, J., specially concurring) (quoting Isserles, *supra*, at 403-04).

The author pointed out how courts, when analyzing such challenges, have to evaluate the statute against the constitutional doctrine affected thereby, independent from its application to particular cases. Here, how the statute applies to the two identified members, although relevant to standing, has no relevance to the nature or outcome of the constitutional challenge other than to identify the source of their complained deprivation. Plaintiff clearly contends the FOID Act, regardless of its terms or application, infringes on its members' second amendment rights.

¶ 45                            3. *Unconstitutionality of the FOID Act*

¶ 46     Plaintiff contends it met its burden for a preliminary injunction (1) by showing its members have a clear right to bear arms protected by the second amendment and (2) because the FOID Act unconstitutionally burdens firearm owners by requiring them to obtain and possess a FOID card as a condition precedent to exercising their second amendment rights, they are likely to succeed on the merits. We disagree.

¶ 47     As stated above, to succeed on a motion for a preliminary injunction, a plaintiff must show: "(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an

injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." *Mohanty*, 225 Ill. 2d at 62.

¶ 48    In accordance with the first element, plaintiff first argues its members have a clearly ascertained legal right in need of protection, which is their constitutional right to keep and bear arms. As has been pointed out by plaintiff numerous times, in *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the United States Supreme Court declared the second amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." The Court found both the district's ban on handgun possession in the home and its prohibition against making a firearm lawfully possessed in the home operable for use in self-defense violative of the second amendment. *Heller*, 554 U.S. at 635. Our supreme court has recognized, "the second amendment protects an individual's right to carry a ready-to-use gun outside the home, subject to certain regulations." *People v. Chairez*, 2018 IL 121417, ¶ 26, 104 N.E.3d 1158. In *Chairez*, our supreme court, quoting *Heller*, noted, "the United States Supreme Court determined that there is a guaranteed 'individual right to possess and carry weapons in case of confrontation,' based on the second amendment." *Chairez*, 2018 IL 121417, ¶ 24 (quoting *Heller*, 554 U.S. at 592). Although it found the right may be subject to certain limitations, the supreme court outlined the cases since *Heller*, which have, if anything, expanded the right to possess and carry firearms. *Chairez*, 2018 IL 121417, ¶¶ 25-26.

¶ 49    As argued by plaintiff, by operation of the FOID Act, Illinois effectively prohibits those constitutionally protected rights without first obtaining consent from the state and payment of a fee. It is not our place, at this stage of the proceedings, to decide whether plaintiff is correct but merely whether it properly alleged a clearly ascertained right in need of protection.

> "An applicant for a preliminary injunction need not make out a case which will entitle him to the ultimate relief he seeks, but need only raise a fair question as to the existence of the right claimed, making it appear advisable that the positions of the parties should remain the same until the court has an opportunity to consider the case on its merits." *Cameron v. Bartels*, 214 Ill. App. 3d 69, 73, 573 N.E.2d 273, 275 (1991).

We believe it does. Defendants' argument is simply that the FOID Act licensing requirement and fee "are long-standing exceptions to the Second Amendment" and therefore do not involve a protectable right. Aside from their oversimplification of the issue, defendants either ignore or fail to appreciate the much more basic position taken by plaintiff. Plaintiff does not contend its rights and obligations under the FOID Act are in danger; instead, plaintiff contends the FOID Act itself violates its members' constitutional right to own and possess firearms under the second amendment. It is that protectable right which it contends is threatened by the mere existence of the FOID Act.

¶ 50    For these reasons, we believe plaintiff has established a clearly ascertained legal right in need of protection.

¶ 51    Plaintiff next contends its members will suffer irreparable injury in the absence of an injunction and have no adequate remedy at law to cure this injury. " '[I]rreparable harm occurs only where the remedy at law is inadequate; that is, where monetary damages cannot adequately compensate the injury, or the injury cannot be measured by pecuniary standards.' " *Ajax Engineering Corp. v. Sentry Insurance*, 143 Ill. App. 3d 81, 83, 491 N.E.2d 947, 949 (1986) (quoting *Best Coin-Op, Inc. v. Old Willow Falls Condominium Ass'n*, 120 Ill. App. 3d 830, 834, 458 N.E.2d 998, 1001 (1983)). As this court said in *Cameron*, "[o]nce a protectable

- 13 -

interest is established," as it has been here, "irreparable injury [or harm] is presumed if that interest is not protected." *Cameron*, 214 Ill. App. 3d at 73. We also explained how "[i]rreparable harm does not mean injury that is beyond repair or beyond compensation in damages but rather denotes transgressions of a continuing nature." *Tamalunis v. City of Georgetown*, 185 Ill. App. 3d 173, 190, 542 N.E.2d 402, 413 (1989). However, when the harm is of a continuous nature, and involves a constitutional right for which monetary compensation would be inadequate, courts have considered it to be *per se* irreparable harm for purposes of injunctive relief. *C.J. v. Department of Human Services*, 331 Ill. App. 3d 871, 891-92, 771 N.E.2d 539, 557 (2002); see also *Lucas v. Peters*, 318 Ill. App. 3d 1, 16, 741 N.E.2d 313, 325 (2000).

¶ 52    In *Ezell*, 651 F.3d at 700, the court likened the intangible and unquantifiable interests involved in what it recognized to be "a pre-existing natural right to keep and bear arms," protected by the second amendment, to those protected by the first amendment. They reasoned, therefore, just like in first amendment cases, the loss of second amendment rights could also be presumed to cause irreparable harm, the infringement of which were not compensable by money damages. *Ezell*, 651 F.3d at 699. In *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010), the Supreme Court described how its ruling in *Heller* recognized the right to keep and bear arms for purposes of self-defense was a central component of the second amendment. "[T]he inherent right of self-defense has been central to the Second Amendment right" and "deeply rooted in this Nation's history and tradition." (Internal quotation marks omitted.) *McDonald*, 561 U.S. at 767. In *Aguilar*, 2013 IL 112116, ¶ 21, our supreme court also found "the second amendment protects the right to possess and use a firearm for self-defense outside the home." In light of the second amendment protections extended to the preexisting natural right to keep and bear arms, a statute which violates that right, if shown to do so, would cause irreparable harm.

¶ 53    Plaintiff's members are required to obtain FOID cards and pay fees to legally obtain firearms. The FOID Act prevented Meyer from possessing firearms because of a criminal conviction appearing on his record, which he denies and for which no record seemingly exists, causing the State of Illinois to revoke his FOID card and requiring him to surrender his firearms. Similarly, the unnamed veteran also cannot possess firearms in Illinois because he failed to renew his license and cannot possess firearms without a valid FOID card. But for the requirements of the FOID Act, neither member would suffer this deprivation, and their only current remedy is to utilize the provisions of the FOID Act they contend is unconstitutional to secure the return of their right to own and possess firearms. Again, use of these examples merely shows how the rule serves as the basis for the decision of which they complain. Plaintiff argues these conditions create an unnecessary burden on its members' constitutional right to bear arms under the second amendment. Further, plaintiff requested a declaratory judgment to reflect the FOID Act's unconstitutional nature and injunctive relief to prevent defendants from enforcing the FOID Act. Such relief is generally considered evidence of a claim of facial unconstitutionality. See Catherine G. O'Grady, *The Role of Speculation in Facial Challenges*, 53 Ariz. L. Rev. 867, 872-73 (2011); see also *One 1998 GMC*, 2011 IL 110236, ¶ 95 (Karmeier, J., specially concurring) (referencing the O'Grady article). As such, there would be no other remedy available at law, since continued application of the FOID Act would result in the continued deprivation of a constitutional right for which plaintiff's members cannot be

adequately compensated with money. Accordingly, plaintiff has properly alleged a valid rule challenge for which there could be no adequate compensation.

¶ 54    We now turn to the fourth element and whether plaintiff had a likelihood of success on the merits. To show a likelihood of success on the merits, the plaintiff must "raise a fair question regarding the existence of a claimed right and a fair question that [the plaintiff] will be entitled to the relief prayed for if the proof sustains the allegations." *Kalbfleisch v. Columbia Community Unit School District Unit No. 4*, 396 Ill. App. 3d 1105, 1114, 920 N.E.2d 651, 660 (2009). The plaintiff should also address the preservation of the "status quo until the case can be decided on the merits." *Giannone*, 108 Ill. 2d at 382; see also *Abdulhafedh v. Secretary of State*, 161 Ill. App. 3d 413, 417, 514 N.E.2d 563, 565 (1987) (holding that to establish the likelihood of success on the merits of the claim, a plaintiff must "make it appear advisable that the positions of the parties stay as they are until the court has an opportunity to consider the merits of the case").

¶ 55    Further, when a plaintiff challenges the constitutionality of a statute, the plaintiff "has the burden of establishing a clear constitutional violation." *One 1998 GMC*, 2011 IL 110236, ¶ 20 (majority opinion). Because plaintiff brings a facial challenge, a successful claim "requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *Thompson*, 2015 IL 118151, ¶ 36. "[A]ny doubt on the construction of a statute [will be resolved] in favor of its validity." *People v. Boeckmann*, 238 Ill. 2d 1, 6-7, 932 N.E.2d 998, 1001 (2010). To answer the question of whether a statute violates the constitutional right to bear arms, courts should follow a two-part process. *In re Jordan G.*, 2015 IL 116834, ¶ 22, 33 N.E.3d 162. Under the first step, the court "conducts a textual and historical analysis to determine whether the challenged state law imposes a burden on conduct understood to be within the scope of the second amendment's protection at the time of ratification." *Jordan G.*, 2015 IL 116834, ¶ 22. If the law falls outside of this scope, "then the regulated activity 'is categorically unprotected,' and the law is not subject to further second amendment review." *Chairez*, 2018 IL 121417, ¶ 21. However, "if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then," under the second step, the court applies a form of intermediate scrutiny and analyzes the state's justifications for restricting the second amendment, including the "public-benefits ends it seeks to achieve." *Chairez*, 2018 IL 121417, ¶¶ 21, 35; *Jordan G.*, 2015 IL 116834, ¶ 22. The level of scrutiny applied depends on the severity of the burden to the second amendment. *Chairez*, 2018 IL 121417, ¶ 35. "The closer in proximity the restricted activity is to the core of the second amendment right and the more people affected by the restriction, the more rigorous the means-end review." *Chairez*, 2018 IL 121417, ¶ 45. "Thus, the heightened means-end inquiry is a sliding scale that is neither fixed nor static." *Chairez*, 2018 IL 121417, ¶ 35.

¶ 56    Under the first step of the analysis, as set forth in *In re Jordan G.*, we must at least assess whether plaintiff has an arguable claim that the FOID Act is inconsistent with the historical understanding of the scope of the rights guaranteed by the second amendment. See *Heller*, 554 U.S. at 625. Longstanding laws are tradition-based exceptions to the scope of the second amendment due to their historical justifications. *Heller*, 554 U.S. at 635. Defendants contend the FOID Act is a longstanding law that regulates firearms at home and elsewhere because it has been in place since 1968. Defendants further assert the FOID Act is unlike a complete firearm ban in the home because the firearm prohibition does not extend to individuals who are legally eligible to obtain firearms, as the FOID Act only excludes those who have felony

- 15 -

convictions, recent or involuntary hospitalizations, or are excluded for another reason outlined in the FOID Act. Defendants set forth several historical laws that maintained various forms of firearm prohibition from four different states enacted in the early twentieth century (Washington, New York, Oregon, and Montana). As plaintiff notes, currently, Massachusetts is the only other state that has a statute similar to the FOID Act in Illinois. Defendants then focus their analysis on one of plaintiff's named individuals in the complaint, Harold Meyer, and distinguish the reasons for his FOID card revocation from the facial constitutional challenge set forth by plaintiff. Meyer's FOID card revocation was based on the section of the FOID Act outlined in 18 U.S.C. § 922(g)(9) (2018), which allows the revocation of one's FOID card for any conviction of a misdemeanor crime of domestic violence. Defendants then cite several federal court cases upholding that particular section.

¶ 57    However, defendants' historical analysis is not so persuasive that it precludes determining whether plaintiff has at least raised a fair question in this regard. According to plaintiff, defendants have identified only four states with laws concerning firearm restrictions, and all of their statutes were enacted in the early twentieth century. It is reasonable for plaintiffs to argue that four such laws are hardly representative of a longstanding, national tradition when compared to the 227-year history of the second amendment. While the various statutes limit access to the constitutional right to bear arms in some degree, the statutes are easily distinguishable from the alleged blanket infringement of the second amendment caused by the FOID Act. For example, the early twentieth century firearm restriction in Washington State applied only to noncitizens, the New York law restricted only concealable firearms, Oregon's law applied only to handguns at the point of sale, and the Montana law was a registration requirement, not a licensing requirement. We agree with plaintiff that none of these laws "required law-abiding citizens to get a license before possessing any kind of firearm in the home." Even if we were to agree that the FOID Act's continued existence since 1968 provides some historical support for its contentions, given the larger historical context since the beginning of the twentieth century, this would only make the historical evidence inconclusive and still lead us to the second step of the analysis. The fact that Massachusetts is the only other state with firearms restrictions similar to Illinois's FOID Act also tends to show there is no modern trend to support defendants' argument. See *Drake v. Filko*, 724 F.3d 426, 450 (3d Cir. 2013).

¶ 58    Furthermore, since the FOID Act does not appear consistent with the modern understanding of second amendment jurisprudence, it can reasonably be argued it was not within the scope of the second amendment's protection at the time of ratification. Both parties agree the FOID Act affects, to varying degrees, anyone's ability to possess firearms anywhere, anytime, for any purpose within the State of Illinois. It does not differentiate in any way between an individual's possession of a firearm in public or within their own home. Giving no consideration to the ability of "responsible citizens to use arms in defense of hearth and home," it is arguable that the FOID Act is not within the understanding of the second amendment at the time of its ratification. *Heller*, 554 U.S. at 635. Thus, because there is at least some basis for plaintiff's allegation the FOID Act is inconsistent with the historical understanding of the scope of the rights guaranteed by the second amendment, we are required to proceed to the second step of the analysis.

¶ 59    As previously described, under the second-step analysis, we must apply intermediate scrutiny to analyze the State's justifications for restricting the second amendment, including

the "public-benefits ends it seeks to achieve." *Chairez*, 2018 IL 121417, ¶ 35. "The closer in proximity the restricted activity is to the core of the second amendment right and the more people affected by the restriction, the more rigorous the means-end review." *Chairez*, 2018 IL 121417, ¶ 45.

¶ 60    Plaintiff alleges the restricted activity in this matter affects the core of the rights protected under the second amendment. The FOID Act directly implicates a person's ability to possess a firearm at home or in public. The individuals affected by the restriction encompass everyone within the State of Illinois who wants to legally possess a firearm. As both parties acknowledge, the FOID Act requires Illinois residents (with some exceptions) to apply for a FOID card, pay the fee, and wait to receive the FOID card in order to legally possess a firearm anywhere in this state. Therefore, a more rigorous means-end review is required, and we review the State's justification for the FOID Act through the lens of an elevated level of intermediate scrutiny.

¶ 61    Accordingly, defendants bear the burden to demonstrate the public's interests are strong enough to substantially justify the FOID Act's encumbrance on an individual's second amendment right. This means defendants must show the FOID Act's requirements have a close fit with the actual public interests the FOID Act serves.

¶ 62    Here, defendants assert the State's important interests are "to promote and protect the health, safety and welfare of the public" by identifying and preventing felons, dangerous persons, and the mentally ill from possessing firearms and firearm ammunition. 430 ILCS 65/1 (West 2018). We certainly accept the general proposition that protecting and promoting the safety of the public are important public concerns. However, while general public safety may be sufficient to pass a rational basis review, this reasoning is normally insufficient, particularly when the government provides no reliable evidence supporting its public safety interests to justify the restrictions imposed by the FOID Act and to meet the burden required by intermediate scrutiny. See *Ezell*, 651 F.3d at 708 (finding the general safety interests supporting the city's firing-range ban, which it considered a prohibitory law encroaching on the core second amendment rights of "law-abiding, responsible citizens," insufficient to pass intermediate scrutiny); *Chairez*, 2018 IL 121417, ¶ 54 (finding State's law prohibiting firearms within 1000 feet of public parks could not pass elevated intermediate scrutiny because its evidence did not show "how the law actually achieves its [health and safety] goal[s] of protecting children and vulnerable populations from gun violence").

¶ 63    Thus, plaintiff has raised a fair question about the existence of a protectable right as it relates to the likelihood of success on the merits to procure a preliminary injunction. See *H.K.H. Development Corp.*, 47 Ill. App. 2d at 51.

¶ 64    Having succeeded in doing so, however, granting the preliminary injunction would not maintain the status quo. Illinois courts have made it clear that "[a] preliminary injunction is intended to preserve the status quo pending a decision on the merits of a case." *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177, 781 N.E.2d 223, 230 (2002). The "[g]ranting [of] a preliminary injunction is used to prevent a threatened wrong or continuing injury and preserve the status quo with the least injury to the parties concerned." *Kalbfleisch*, 396 Ill. App. 3d at 1113. However, "[t]he status quo to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy." *Postma*, 157 Ill. 2d at 397. Perhaps more importantly, "as a general rule, an attack on the constitutionality of a statute should not be resolved upon application of a temporary [or preliminary]

injunction." *Lake Louise Improvement Ass'n v. Multimedia Cablevision of Oak Lawn, Inc.*, 157 Ill. App. 3d 713, 717-18, 510 N.E.2d 982, 985 (1987) (finding the grant of a preliminary injunction by the trial court for a claim implicating the takings clause was inappropriate because the status quo in the case "would be better kept if no finding as to the constitutionality of the statute authorizing the franchising of cable television by municipalities" had been made). No injunction should go "further than is essential to safeguard plaintiffs' rights." *Lake Louise Improvement Ass'n*, 157 Ill. App. 3d at 717; see also *Klein's Restaurant Corp. v. McLain*, 293 Ill. App. 54, 57, 11 N.E.2d 644, 645 (1937) (finding the grant of a preliminary injunction is inappropriate where it "in effect disposes of the merits of the controversy between the parties").

¶ 65    For Meyers, the unnamed veteran, and others like them, their last status before the litigation of this case was that they could not possess firearms in Illinois because they did not have valid FOID cards. Granting the injunction would change their status—giving them the ability to possess firearms without a valid FOID card. Although maintaining the status quo could arguably further the irreparable injury to plaintiff's members, granting the preliminary injunction could similarly cause irreparable injury to the State of Illinois, since it would no longer have the means to identify individuals unqualified to possess firearms or ammunition, and it has no alternative means to do so readily in place. In effect, this would upset the status quo by nullifying a statute that has been in effect since 1968. We also cannot ignore that this claim questions the constitutionality of the entire FOID Act, and the natural implications resulting from the issuance of a preliminary injunction could be viewed as final disposition on the merits of plaintiff's claim. This would also result in a change in the status quo, contrary to the intended purposes of a preliminary injunction. Accordingly, the status quo would best be maintained without the injunctive relief plaintiff seeks, making the grant of a preliminary injunction inappropriate.

¶ 66    We also note that this case is distinguishable from *Kalbfleisch*. In *Kalbfleisch*, the trial court granted an autistic student a preliminary injunction allowing him to attend school with a service dog. *Kalbfleisch*, 396 Ill. App. 3d at 1120. The school district argued this relief disturbed the status quo because the student had not previously attended school with a service dog. *Kalbfleisch*, 396 Ill. App. 3d at 1118. The Fifth District considered the preliminary injunction appropriate, finding the student would otherwise have "no avenue to prevent suffering irreparable harm," and stated "[a] probable violation of law should never be the status quo." *Kalbfleisch*, 396 Ill. App. 3d at 1118-19. As a result, the court considered the preliminary injunction appropriate relief because it would prevent prospective damage. *Kalbfleisch*, 396 Ill. App. 3d at 1119.

¶ 67    *Kalbfleisch* is clearly distinguishable because the claim neither directly implicated the student's constitutional rights, as the claim does here, nor was the case considered under the *de novo* standard of review. Significantly, because the determination of whether to grant a preliminary injunction necessarily requires a consideration of the likelihood of success on the merits of the claim, each claim for injunctive relief must be determined on a case-by-case basis. Accordingly, even when a plaintiff can raise a fair probability about the likelihood of success, and the plaintiff probably will continue to endure irreparable harm, denying injunctive relief may still be appropriate to preserve the status quo. This is because courts should consider the status quo as it affects both parties, not merely the party seeking injunctive relief. See *Kalbfleisch*, 396 Ill. App. 3d at 1113. To suggest otherwise could change the preliminary injunction's status as an extraordinary remedy, reserved for extreme emergency or serious

harm. See *Costigan*, 2012 IL App (4th) 110869, ¶ 11. Further, when a preliminary injunction is denied, the plaintiff still has an avenue for relief in the ultimate disposition of the case. In recognizing the status quo would be changed with the grant of a preliminary injunction, we have done no more than apply these rules to the unique circumstances plaintiff presents.

¶ 68    Additionally, when a plaintiff establishes a fair question about its entitlement to relief for a preliminary injunction and after courts consider the status quo, courts must also balance the equities associated with the claim. When the elements of a preliminary injunction are met, "the court must balance the hardships and consider the public interests involved." *Makindu*, 2015 IL App (2d) 141201, ¶ 31. " 'In balancing the equities, the court must weigh the benefits of granting the injunction against the possible injury to the opposing party from the injunction.' [Citation]." *Kalbfleisch*, 396 Ill. App. 3d at 1119. This requires the court to "determine the relative inconvenience to the parties and whether the burden upon the [requesting party], should the injunction issue, outweighs the burden to the [opposing party] by denying it." *Shodeen v. Chicago Title & Trust Co.*, 162 Ill. App. 3d 667, 672-73, 515 N.E.2d 1339, 1343 (1987). "Plaintiffs are also required to show in the trial court that they would suffer more harm without an injunction than defendants will suffer with it." *Granberg v. Didrickson*, 279 Ill. App. 3d 886, 890, 665 N.E.2d 398, 401 (1996). "[T]he court should also consider the effect of the injunction on the public." *Granberg*, 279 Ill. App. 3d at 890.

¶ 69    In balancing the equities of this claim, we find a preliminary injunction is not warranted. The benefits of granting the injunction for plaintiff's members are clear. They would no longer be bound by the FOID Act's restrictions. They, and all other Illinois residents, would not need to possess, apply for, or renew their FOID cards. Individuals like Meyer and the unnamed veteran would no longer be prevented from possessing firearms and could gain access to their firearms or acquire new ones. However, the injury to the State of Illinois is just as certain. The purpose of the FOID Act is to "promote and protect the health, safety and welfare of the public" by preventing certain persons, such as felons and the mentally ill, "from acquiring or possessing firearms and firearm ammunition." 430 ILCS 65/1 (West 2018). Without the FOID Act, the State of Illinois would have no system to identify the persons who are not qualified to possess firearms or firearms ammunition. As defendants warn, this would "result in dangerous individuals acquiring and possessing firearms." Although true for purposes of our analysis, neither the FOID Act, nor any other restriction on firearms, prevents this. Since there are, as *Heller* indicates, "longstanding prohibitions on the possession of firearms by felons and the mentally ill," which could include the FOID Act, there are strong public interests in preventing such individuals from possessing firearms. *Heller*, 554 U.S. at 626. The direct consequence of granting the preliminary injunction would be to leave the State of Illinois and the public without a system designed and intended to identify at least some of those persons who should not acquire firearms or notify the State of Illinois when a person attains that status. With no other system currently in place to accomplish, or at least aspire to accomplish, the same goal without running afoul of the second amendment rights of its citizens, the balancing of the harms to be caused by granting injunctive relief favors its denial.

¶ 70    Plaintiff has also failed to show it would suffer more harm than defendants or the public. Plaintiff first suggests the harm to defendants and the public would be relatively insignificant because dangerous individuals and criminals already circumvent the FOID Act and illegally possess firearms. While it is likely true that some Illinois residents do not properly obtain FOID cards, it does not mean the FOID Act lacks efficacy or the State of Illinois would have no

injury. Just as there are people who circumvent the law, there are people who follow it, and as a result, it is at least arguable the FOID Act has prevented unfit individuals from obtaining firearms or ammunition. Plaintiff also alleges the State's injury would be minimal because it has "other means of preventing" unfit individuals from possessing firearms, such as implementing additional background checks at the point of sale. However, plaintiff has not shown whether these alternatives are already in place and could immediately serve as an effective substitute for the FOID Act in the event a preliminary injunction would be granted. Rather than leave the State of Illinois and the public with nothing, the balance of equities supports denying the preliminary injunction. For these reasons, we cannot say plaintiff would suffer more harm without an injunction than defendants.

¶ 71   While plaintiff has demonstrated a fair question as to each of the elements required, granting the preliminary injunction would change the status quo and would not benefit the public interest. In so finding, we make no judgment as to the final merits of plaintiff's claims, nor do we suggest the FOID Act's restrictions are mere inconveniences. Instead, we reemphasize the heavy burden a plaintiff must meet to receive a preliminary injunction, particularly in the context of constitutional challenges where the granting of an injunction would have far-reaching consequences for the public.

¶ 72                                    4. *Unconstitutional Tax*

¶ 73   Plaintiff also argues it met the burden for a preliminary injunction because the licensing scheme has no legitimate purpose, making the FOID fees an unconstitutional tax. We disagree. This is a matter which we choose to address separately from the allegation of the entire FOID Act's unconstitutionality, since it is possible to reach the issue of the unconstitutionality of the fees as a tax separately from the entire act and it was argued in the alternative. Had plaintiff been successful, it might have been able to avoid the fees, yet remain subject to the remainder of the FOID Act.

¶ 74   Plaintiff has established the first three elements for a preliminary injunction, as indicated above, because the second amendment's right to bear arms is a right in need of protection and the infringement on that constitutional right by the FOID Act's application and renewal fees are of a continuous and ongoing nature and, therefore, are not the proper subject of money damages. Further, under plaintiff's version, the existence of the fees has caused irreparable injury that can only be resolved with equitable relief. Accordingly, the most important question here is whether plaintiff demonstrated it is likely to succeed on the merits of the case. As described above, to meet this element, plaintiff must "raise a fair question regarding the existence of a claimed right and a fair question that [plaintiff] will be entitled to the relief prayed for if the proof sustains the allegations." *Kalbfleisch*, 396 Ill. App. 3d at 1114.

¶ 75   "[T]he Supreme Court's First Amendment fee jurisprudence provides the appropriate foundation for addressing *** fee claims under the Second Amendment." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013). In the first amendment context, the Supreme Court has held governmental entities may impose licensing fees when they are designed " 'to meet the expense incident to the administration of the [licensing statute] and to the maintenance of public order in the matter licensed.' " *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941). "Put another way, imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity." *Kwong*, 723 F.3d at 165. The licensing fee must serve the "legitimate

purpose of defraying the expenses incident to the administration and enforcement" of the licensing statute. *National Awareness Foundation v. Abrams*, 50 F.3d 1159, 1166 (2d Cir. 1995).

¶ 76     In plaintiff's motion for a temporary restraining order and injunctive relief, and in its appeal, plaintiff indicated the $10 fee to possess a FOID card is an unconstitutional tax, as it exacts fees for the exercise of fundamental constitutional rights. Plaintiff references several sections of the FOID Act, noting that (1) the $10 fee is deposited into three different state funds, including the Wildlife and Fish Fund (see 430 ILCS 65/5(a) (West 2018)), (2) the cost to renew the card is $10 (see 430 ILCS 65/5(b) (West 2018)), and (3) the cost of replacing the card is $5 (see 430 ILCS 65/13.2 (West 2018)). Plaintiff further contends, particularly in regard to the Wildlife and Fish Fund, that the fees are a tax because they are not commensurate with the expenses of administrating the licensing program.

¶ 77     However, defendants presented evidence demonstrating the FOID fees have legitimate purposes connected with the administration of the FOID program. From each new FOID application, "$3 of the fee shall be deposited in the State Police Firearm Services Fund." 430 ILCS 65/5(a) (West 2018). All the fees collected from renewed applications and corrected or replaced FOID cards are also deposited into the State Police Firearm Services Fund. 430 ILCS 65/5(b), 13.2 (West 2018). These funds are expressly designated "to finance any of its lawful purposes, mandates, functions, and duties under the Firearm Owners Identification Card Act and the Firearm Concealed Carry Act, including the cost of *** prompt and efficient processing of applications." 20 ILCS 2605/2605-595(b) (West 2018). As to the portion of the fee deposited into the State Police Firearm Services Fund, the fee is clearly imposed to defray the cost of the licensing program.

¶ 78     Defendants' evidence also contradicts plaintiff's primary argument that the distribution of the fee to the Wildlife and Fish Fund makes the fee unconstitutional, as it is not incidental to the administration and enforcement of the FOID statute. Although every $6 of the $10 FOID fee goes to the Wildlife and Fish Fund, by statute those funds are used "to conduct courses, of not less than 10 hours in length, in firearms and hunter safety, which may include training in bow and arrow safety, at regularly specified intervals throughout the State." 520 ILCS 5/3.2 (West 2018). This program corresponds with the FOID Act's purpose "to promote and protect the health, safety and welfare of the public" and "provide a system of identifying persons who are not qualified to acquire or possess firearms, firearm ammunition, stun guns, and tasers within the State of Illinois." 430 ILCS 65/1 (West 2018). As a result, it is reasonable to conclude that the fee is for a legitimate purpose and find plaintiff has failed to meet the burden necessary to grant a preliminary injunction.

¶ 79     Defendants contend the FOID Act fees help defray the expenses associated with administrating the statute. Plaintiff does not dispute this fact, recognizing "the cost of making a FOID card is about equal to the application fee." Because both parties acknowledge this fact, it is again reasonable to find that the fee has a legitimate purpose of defraying the expenses incident to the administration and enforcement of the licensing statute. Accordingly, plaintiff failed to show it would likely be successful on the merits of its claim.

¶ 80                     III. CONCLUSION
¶ 81          For the reasons stated, we affirm the trial court's judgment.

¶ 82          Affirmed.